# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

JANELLE R. BECK, )
)
        Plaintiff, )   No. 16 cv 3013 EJM
vs. )
)    ORDER
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
        Defendant. )

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for social security disability income benefits. Briefing concluded September 30, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff asserts the Administrative Law Judge (ALJ) erred by (1) finding that she did not meet Listing 12.07 or equaled Listing 11.03, (2) not developing the record sufficiently and not obtaining an opinion from an examining source, (3) failing to update records from social worker Emilie McNace, LISW, (4) discounting the opinions of the social worker and plaintiff's mother, and (5) failed to include her need for frequent absences due to seizures in his residual functional capacity (RFC) finding. Accordingly, she asserts that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision. This requires [the court] to do more than merely parse the record for substantial evidence supporting the [Commissioner's] decision. [The court] also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but

enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992.)

Plaintiff at the time was a forty-four year old woman with a tenth grade education. She alleged disability due to pseudoseizures from a conversion disorder, bipolar disorder, and attention deficit hyperactivity disorder (ADHD.) The ALJ found that plaintiff did not meet her burden of proving that she met any Appendix 1 Listing of Impairment. He further found that, based on the testimony of a Vocational Expert (VE) she had the residual functional capacity (RFC) to perform light exertional work, with limitations, including such jobs as a hospital cleaner, janitor or laundry clerk.

Plaintiff first argues that the ALJ failed to find that she met Listing 12.07 or equaled Listing 11.03. The burden of proof is on plaintiff to establish her impairment meets or equals a listing. Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006). Plaintiff has the burden of proving her impairments satisfy *all* the requirements of a Listing; an impairment manifesting "only some of those criteria, no matter how severely, does not qualify." See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (Zebley); *see also* 20 C.F.R.§ 404.1520(a)(4)(iii); *accord* Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The question of whether a claimant meets a listed impairment is a medical determination Cockerham v. Sullivan, 895 F.2d 492, 496 (8th Cir. 1990).

Plaintiff must have the following to meet her burden of proving she satisfied Listing 12.07:

*Somatoform Disorders:* Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:
1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
2. Persistent nonorganic disturbance of one of the following:
a. Vision; or
b. Speech; or
c. Hearing; or
d. Use of a limb; or
e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia); or
f. Sensation (e.g., diminished or heightened).
3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

B. Resulting in *at least two* of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

See 20 C.F.R. Pt, 404, Subpt. B, App. 1, § 12.07. Plaintiff asserts her psychoseizures satisfied 12.07.A.2.e. But plaintiff does not show she satisfied "at least two" of the requirements in 12.07.B. *Id.*

The ALJ found plaintiff had no more than moderate restrictions of daily activities, social functioning, and concentration, persistence, and pace (Tr. 10). Plaintiff did not challenge these findings. Thus, even if plaintiff satisfied 12.07.A.2.e. and 12.07.B.4, she did

3

not meet her burden of proving she met the minimum required criteria for a finding of a *per se* disability under Listing 12.07. *See* 20 C.F.R.§ 404.1520(a)(4)(iii); *accord* Young, 221 F.3d at 1069 n.5; Zebley, 493 U.S. at 530; Gonzales, 465 F.3d at 894.

Plaintiff alternatively asserts her pseudoseizures "equal" the criteria for a *per se* disability finding pursuant to Appendix 1 Listing 11.03 pertaining to nonconvulsive epilepsy. To show an impairment medically equals a listing, plaintiff must demonstrate the impairment meets all of the specified medical criteria, as an impairment manifesting only some of those criteria, no matter how severely, does not qualify. Zebley, 493 U.S. at 530; Gonzales, 465 F.3d at 894; 20 C.F.R. § 404.1520(a)(4)(iii); Young, 221 F.3d at 1069 n.5.

Listing 11.03 requires the following:

> *Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

*See* 20 C.F.R. Pt, 404, Subpt. B, App. 1, § 11.03.

The question of whether a claimant meets a listed impairment is a medical determination. Cockerham, 895 F.2d at 496. The medical evidence does not show that plaintiff met all the required criteria. Plaintiff's amended alleged onset date is July 1, 2013, when she was imprisoned at the Nebraska Department of Corrections (DOC) for attempted class 3 felony burglary (Tr. 31, 254, 688 - incarcerated from June until early December 2013). An electroencephalogram (EEG) and computerized tomography (CT) scan of her head in May 2013 were both negative for epileptic activities (Tr. 460, 462). DOC records on June 27, 2013 (only three days before her alleged onset date), state plaintiff's seizure-

4

like activity had been controlled since she started taking Vistaril medication three times daily (Tr. 638). Plaintiff must follow a medication regimen that can control her seizures or she cannot satisfy Listing 11.03. See 20 C.F.R. Pt, 404, Subpt. B, App. 1, §§ 11.00.A. and 11.03; see also Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (conditions controlled with medication are not medically severe); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (same). No seizure activity was noted as of July 6, 2013 (Tr. 623). She had seizure-like activity on July 16, but she did not have manifestations of unconventional behavior or significant interference with activities (Tr. 622). The next seizure-like activity was on July 28, more than 12 days later (Tr. 619). Thus, they did not occur more than "once weekly in spite of at least 3 months of prescribed treatment."

The evidence from the Nebraska DOC, when plaintiff was nearly continuously monitored, shows plaintiff did not have seizure-like activity "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." Even when they reportedly occurred more often, she did not have evidence of "transient postictal manifestations of unconventional behavior or significant interference with activity during the day." She did not have the medical evidence to satisfy her burden of proving she medically equal Listing 11.03. See 42 U.S.C. § 423(d); Social Security Ruling ("SSR") 82-58, at *1; SSR 96-5p, at *4; Marolf v. Sullivan, 981 F.2d 976, 978 (8th Cir. 1992); Brown v. Shalala, 15 F.3d 97, 99-100 (8th Cir. 1994) (claimant failed to provide "medically acceptable" evidence to support claim).

Plaintiff next argues that the ALJ did not sufficiently develop the record and did not obtain an opinion from Emilie McNace, LISW, an examining source. However, the record in this case contains sufficient information for the ALJ to make an informed

5

decision on the claim for disability benefits. Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985) (ALJ need only ensure the record is sufficiently developed so he can make an informed decision).

Social worker McNace is a "non-acceptable" medical source, and SSR 06-03p explains only "acceptable" medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources. *See* SSR 06-03p, 2006 WL 2329939, at *2. The mere fact social worker McNace saw plaintiff does not alone establish reversible error in light of the objective mental status examinations from the various examining doctors during the same time period. As such, plaintiff cannot show the ALJ needed the non-acceptable medical source's records. The burden of showing reversible error falls on the party attacking the Commissioner's decision, and reversible error does not exist when plaintiff has not shown any potential impact on the disposition of the case.

As shown in the Joint Statement of Facts (JSOF) and what plaintiff restated in her brief, the record contains medical records from plaintiff's various treating and examining doctors. *See* JSOF, pages 6-11, and Plaintiff's Brief at 7-11. Thus, this is not a case where there was no medical evidence from an examining or treating doctor. This case involves the situation where the ALJ properly considered the evidence and weighed it with the record as a whole (Tr. 10-15). The rejection of a physician's opinion does not trigger the duty to re-contact the physician for another opinion. Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013); *accord* 20 C.F.R. § 404.1520b. *See* SSR 96-5p, at *4; SSR 96-8p, 1996 WL 374184, at *2; 20 C.F.R. § 416.927(e)(2). As courts have recently noted, the ALJ has sufficiently developed and considered the record when the ALJ insures the record contains

medical evidence from a treating source. See Sneller v. Colvin, 2014 WL 855618, No. C12-4113-MWB, at *9 (N.D.Iowa Mar. 5, 2014) (unpublished); see also Agan v. Astrue, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (ALJ did not rely solely on non-treating doctors as RFC supported by substantial evidence, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations"). The Eighth Circuit Court of Appeals also held:

> This duty [to develop the record] includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue. . . . In this case, there is substantial psychological evidence in the record, from both treating and examining physicians. Each of these sources described Strongson's functional abilities. Accordingly, we conclude that the ALJ's failure to obtain Ms. Diamond's views does not vitiate the force of the findings he made regarding Strongson's functional abilities.

See Strongson v. Barnhart, 361 F.3d 1066 (8th Cir. 2004); see also Jones v. Astrue, 619 F.3d 963, 971 (8th Cir. 2010) (requiring the record only contain "some medical evidence" supporting the ALJ's decision"); Heino v. Astrue, 578 F.3d 873, 879-80 (8th Cir. 2009) (holding ALJ could rely on other opinion evidence rather than a treating physician's opinion).

There is also no merit to plaintiff's objection to the ALJ's reference to the state agency medical experts. See Plaintiff's Brief at 19. The ALJ's reliance, in part, on the state agency medical experts is in accordance with the relevant law from the United States Supreme Court, Eighth Circuit Court of Appeals, and the Commissioner's Rulings, all of which hold such opinions from state agency medical experts can provide substantial evidence to support the ALJ's RFC finding. Richardson v. Perales, 402 U.S. 389, 408 (1971). In addition to Strongson, the Eighth Circuit Court of Appeals noted the ALJ can

7

properly rely upon the opinions of non-examining sources when the ALJ otherwise reviews the record as a whole. Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."). The Eighth Circuit Court of Appeals also noted non-examining medical expert opinions can satisfy the ALJ's need to consider at least some supporting evidence from a professional. Harvey v. Barnhart, 368 F.3d 1013, 1016 (8th Cir. 2004) (permitting reliance upon state agency experts as part of record); Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004) (citing 20 C.F.R. § 404.1545(c)). The Commissioner's regulations and rulings also permit the ALJ to rely upon the state agency medical experts. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." See 20 C.F.R. § 404.1527(f)(2); SSR 96-6p, 1996 WL 374180, at *2; see also Jones o/b/o Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003).

Plaintiff's third argument is that the ALJ failed to update records from social worker Emilie McNace, LISW. Plaintiff asserts the ALJ should have obtained the outpatient treatment records from social worker McNace because he found there was little evidence of outpatient treatment. However, at the hearing plaintiff's attorney assured the ALJ the record was complete (Tr. 29). Courts do not require the ALJ to be a claimant's advocate when she has a representative, and permit the ALJ to rely on the administrative attorney's presentation of the case. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994). Plaintiff's administrative attorney is responsible for presenting the best case possible for entitlement to benefits. Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988); *accord*, Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991) (burden on claimant to prove

8

disability and thus she has responsibility for presenting the strongest case possible). Also, plaintiff's administrative attorney has an affirmative duty to promptly obtain the information and evidence plaintiff wants to submit in support of her claim. See 20 C.F.R. § 416.940(b)(1).

Even if the update were accepted, it would not change the result. In January 2014, social worker McNace noted plaintiff's conversion disorder manifested in grand mal seizures, which lessened in frequency significantly since she first saw plaintiff in March 2013 (Tr. 684). Impairments helped with treatment are not severe. Buckner v. Astrue, 646 F.3d 549, 557 (8th Cir. 2011); Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (depression improved with regimen of medication and counseling is not medically severe). See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996) (conditions controlled with medication are not medically severe); Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996) (same); see also Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002).

Other mental status examinations in the record demonstrate additional records from social worker McNace would not alter the ALJ's denial. In May 2013, Suresh Kota, M.D., noted plaintiff specifically denied worsening depression despite being under a lot of stress, and the mental status findings showed plaintiff was alert and oriented with a neutral mood (Tr. 463-464). Paul Babikian, M.D., reported plaintiff's mental status showed she was alert and oriented with normal speech, recent and remote memory, attention span, concentration, and fund of knowledge (Tr. 467). On several reports between April 2013 and January 2014, Pablo Amador, M.D., also noted plaintiff's mental status showed she was oriented, had an appropriate affect and demeanor, had intact recent and remote

memory, and had good insight and judgment (Tr. 492, 495, 498, 500, 508, 574, 576, 668, 805). In January 2014, S.O. Lee, M.D., opined plaintiff had some pressured speech and an angry mood, but she was cooperative, appropriately dressed and groomed, and had normally connected thoughts, orientation, attention, memory, information, and fund of knowledge (Tr. 689). Advanced Registered Nurse Practitioner ("ARNP") Marilyn Paplow assessed plaintiff with a global assessment of functioning ("GAF") score of 60 in March 2014 (Tr. 693).[1] Plaintiff's mental status examinations indicated she was alert and oriented, thoughts were clear and connected, speech was regular, affect was cheerful, demeanor was congruent, speech was regular, eye contact was good, grooming and hygiene were adequate, and insight and impulse control were intact (Tr. 692). Dr. Segreto noted plaintiff's mental status examination in March 2014 indicated she was well groomed, pleasant, cooperative, alert, and oriented, and her thoughts were fairly well organized despite not taking her Adderall medication (Tr. 703). In April 2014, Kelli Roenfanz, D.O., reported plaintiff was not truthful with answers to medical questions, her mental status examination was grossly normal, and she was alert and oriented (Tr. 712). In January 2015, Phillip Muller, D.O., reported plaintiff was clean, well groomed, and cooperative, and had direct eye contact and thought processes, appropriate expressions, calm movements, coherent speech and thought content, and fair insight and judgment (Tr. 737). Kerstin Helgason reported plaintiff appeared alert and oriented, she was neat and clean, her behavior was normal and had appropriate interaction, she had correct posture, eye contact

---

[1] A GAF score of 51-60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorder*, 4th Ed. ("DSM-IV"), p. 34.

10

and attention were good, she was calm with no unusual mannerisms or tremor, she was friendly and cooperative, her mood was neutral and she did not appear depressed, manic, or hypomanic, her affect was within normal limits and appropriate, her speech was normal and non-pressured, her thought process was logical, her recent and remote memory appeared good, her judgment and insight were fair, and she did not appear to have any abnormal involuntary movements (Tr. 740). On January 30, 2015, Dr. Muller noted plaintiff was clean, well groomed, and cooperative, and relaxed, and had direct eye contact and thought processes, appropriate expressions, calm movements, coherent speech and thought content, and good insight and judgment (Tr. 748). Thus, plaintiff's pseudoseizures did not occur more frequently than once a week, given treatment.

Plaintiff's fourth argument is that the ALJ wrongly discounted the opinions of the social worker and of plaintiff's mother. Plaintiff asserts the ALJ erred in discounting social worker McNace's opinion stating plaintiff "would not be able to maintain any type of employment at this time due to the consistent nature of these seizures and the debilitating effects they have on her ability to function." *See* Plaintiff's Brief at 20.

As noted above, social worker McNace is a "non-acceptable" medical source, and SSR 06-03p explains only "acceptable" medical sources can give medical opinions and be considered treating sources. *See* SSR 06-03p, at *2; *see also Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (stating only acceptable medical sources can provide medical opinions). The ALJ correctly noted she was a non-acceptable medical source (Tr. 13).

The ALJ further noted the conclusory nature of this statement, which usurps an issue reserved solely to the Commissioner (Tr. 13). The determination of disability and the determination of plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R.§

11

404.1527(e)(1), (2). No opinion on these issues is controlling or entitled to any special significance. See 20 C.F.R. § 404.1527(e)(5); SSR 96-5p, at *2. An ALJ need only give specific, legitimate reasons for discounting an opinion if it contains specific work functions and limitations. See SSR 96-5p; 20 C.F.R. § 404.1527(a)(2) and (e). Social worker McNace's statement that plaintiff "would not be able to maintain any type of employment" does not contain specific work functions. Plaintiff's reliance on this conclusory statement is misplaced.

Also, the ALJ noted social worker McNace's statement is inconsistent with the fact plaintiff merely underwent conservative treatment (Tr. 13). Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (claimant's conservative treatment is inconsistent with a finding of disability). As shown above, the mental status examinations repeatedly indicated plaintiff maintained good mental functioning. The ALJ can discount any opinion inconsistent with the record as a whole. Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2006); Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2) and (3) (lack of supportability and consistency of an opinion is basis to accord it little or no weight). "In determining what weight to give 'other medical evidence,' [from non-acceptable medical sources] the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005).

The ALJ also properly considered the statements from plaintiff's mother (Tr. 12). This is not a case where the ALJ ignored this type of evidence. The Court should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd, 621 F.3d at 738; Howard, 255 F.3d at 581. Plaintiff's mother testified plaintiff's seizures started around January 2013, and they often occurred in her sleep (Tr. 12, 15, 53-54). These

12

nighttime events would not prevent work or involve absences from the worksite. It is also proper for the ALJ to not fully accept these lay witness statements because they may be colored by sympathy for the relative. Lawrence v. Chater, 107 F.3d 674 (8th Cir. 1997); Brown v. Chater, 87 F.3d 963, 965-966 (8th Cir. 1996).

Similar to plaintiff's subjective statements, her mother's statements indicate disabling limitations, which, as shown, are inconsistent with the evidence of record as a whole (Tr. 12, 15). Despite plaintiff's conditions, her mother reported, and the record supports, plaintiff could prepare daily meals, perform some household chores, and shop in stores (Tr. 15, 294-297). The ALJ found plaintiff has limitations as evidenced by his RFC finding; however, the evidence of record does not support the severity of limitations plaintiff's mother identified (Tr. 15). Thus, the ALJ gave only some weight to her statements. (Tr. 15). As is true in many disability cases, there is no doubt plaintiff experiences limitations due to her medical conditions; however, the real issue is the extent of those limitations. *See* Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). An ALJ "is not required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Because the ALJ had good reasons for not fully crediting plaintiff's subjective allegations, and the record supports the ALJ's reasoning, this court affirms his reasons for discrediting the similar subjective allegations of her mother. *See* Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); *see also* Hurd, 621 F.3d at 738 (Court should defer to SSA); Howard, 255 F.3d at 581.

Plaintiff's fifth and last argument is that the ALJ failed to include her need for frequent absences due to seizures in his residual functional capacity (RFC) finding.

13

Plaintiff asserts the ALJ's RFC should have included absences from work due to her pseudoseizures. Plaintiff cannot meet her burden of proving she has this restriction with her own subjective statements; she must have supporting "medically determinable" evidence showing her condition result in such restriction. *See* 42 U.S.C. § 423(d)(1)(A); SSR 82-58, 1982 WL 31378, at *1; *see also* Brown v. Shalala, 15 F.3d 97, 99-100 (8th Cir. 1994) (claimant failed to provide "medically acceptable" evidence to support claim). When plaintiff simply cites to her subjective allegations and diagnoses, the Court should find she did not satisfy her burden of proof. *See* 42 U.S.C. § 423(d); SSR 96-5p, 1996 WL 374183, at *4; Marolf, 981 F.2d at 978. Thus, plaintiff's reliance on her mother's observations and the event before the ALJ cannot satisfy her burden of proving frequent absences should be in the RFC finding. *See* Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant."); McNamara v. Astrue, 590 F.3d 607, 612 (8th Cir. 2010) (explaining claimant must demonstrate impairment produced "additional work-related limitations" not included in RFC assessment).

Plaintiff correctly notes pseudoseizures were documented when plaintiff was in the Nebraska DOC during the first six months of the adjudicated period. But, as shown above, even then there was little evidence that plaintiff would be impacted the entire day. Subsequent treating doctors did not state pseudoseizures were a major concern during the almost two remaining years of the adjudicated period. If plaintiff stopped taking medication, she would not be eligible for benefits based on this condition because an individual with a seizure condition must be under prescribed treatment. And, if the occurrences lessened from the "spells" at the DOC, there would not be frequent absences

14

from work as alleged as even at the DOC plaintiff was not incapacitated for the day. Plaintiff cannot undermine this medical evidence with her own beliefs or an opinion from a "non-acceptable" medical source such as social worker McNace because only "acceptable" medical sources can give medical opinions. *See* SSR 06-03p, at *2; *see also* Sloan, 499 F.3d at 888 (stating only acceptable medical sources can provide medical opinions). Plaintiff did not meet her burden of proving she had medically determinable "additional work-related limitations" not included in the ALJ's RFC assessment. McNamara, 590 F.3d at 612; Vossen, 612 F.3d at 1016.

Based on the record, it is the court's view that the Commissioner's decision is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

October 11, 2016

_____
Edward J. McManus, Judge
UNITED STATES DISTRICT COURT